UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHNNY DE LUIS MORELO,

          Plaintiff,

  v.

ASHOK MALLYA, M.D.,

          Defendant.

Case No. C15-1266-RAJ-BAT

**REPORT AND RECOMMENDATION**

Johnny De Luis Morelo, an immigration detainee at the Northwest Detention Center ("NWDC") in Tacoma, Washington, is proceeding *pro se* in this civil rights action against Ashok Mallya, M.D., a psychiatrist at the NWDC.  He alleges that Dr. Mallya has violated his Eighth Amendment rights by providing constitutionally deficient mental health treatment.  Dkt. 3.

On January 11, 2016, and January 15, 2016, Mr. Morelo filed motions seeking release from immigration detention or transfer to a mental health treatment facility.  Dkts. 39 & 49.  The Honorable Richard A. Jones has previously denied such requests by Mr. Morelo.  Dkts. 52 & 57.  Because Mr. Morelo's current requests are merely duplicative, they should be **DENIED**.[1]

On January 19, 2016, Dr. Mallya filed a motion for summary judgment, Dkt. 43, which has been fully briefed.  For the reasons discussed below, Dr. Mallya's motion for summary

---

[1] The Court does not provide further discussion of these motions in this Report and Recommendation.  For a more thorough discussion of Mr. Morelo's requests for release, see Docket Numbers 24 and 41.

REPORT AND RECOMMENDATION - 1

judgment should be **GRANTED** and this action should be **DISMISSED** with prejudice.

## BACKGROUND

**A.     Mr. Morelo's mental health treatment at the Northwest Detention Center**

Mr. Morelo, who is 37 years old, has an extensive history of psychiatric problems. His current diagnoses are schizoaffective disorder and antisocial personality disorder, but he has a history of polysubstance dependence. Dkt. 44 ("Mallya Decl.") at ¶¶ 4, 11. Dr. Mallya provided psychiatric care to Mr. Morelo from February 2014 through October 2015. *Id.*, Ex. 1. Mr. Morelo also treated regularly with Anita Glenn-Reller, the NWDC's licensed clinical social worker. Dkt. 45 ("Hansford Decl."), Ex. 1.

At Mr. Morelo's first appointment with Dr. Mallya on February 3, 2014, Mr. Morelo reported distressing auditory hallucinations but acted inconsistently with his stated symptoms. Mallya Decl. at ¶¶ 3-4; *id.*, Ex. 1 at 001-002. He asked Dr. Mallya to switch his prescription for Haldol—an antipsychotic used to treat schizophrenia and schizoaffective disorder—from daily tablets to a monthly injection. *Id.* Dr. Mallya prescribed Mr. Morelo Haldol injections and scheduled a follow up appointment. *Id.*

On March 3, 2014, Mr. Morelo reported continuing auditory hallucinations and complained of insomnia, tremors, and restlessness. *Id.* at ¶ 5; *id.*, Ex. 1 at 005-006. Dr. Mallya started him on Thorazine, another antipsychotic used to treat schizophrenia and schizoaffective disorder, and Cogentin, a medication that can reduce the side effects caused by schizophrenia medications. *Id.*

Mr. Morelo subsequently suffered priapism, a sustained and painful erection, and was seen in a local hospital emergency room. *Id.* at ¶ 6; *id.*, Ex. 1 at 007-008. Priapism is a known side effect of schizophrenia and schizoaffective disorder medications used to treat auditory

1  hallucinations. *Id.* On March 5, 2014, Dr. Mallya examined Mr. Morelo after his return from
2  the hospital. *Id.* Dr. Mallya immediately discontinued Thorazine because priapism seemed to
3  have occurred after adding this medication, but continued the Hadol injections. *Id.*

4  At their next appointment on May 8, 2015, Mr. Morelo asked to stop his psychiatric
5  medications, and he continued to refuse to take any psychiatric medications for the next two
6  months. *Id.* at ¶¶ 7, 8; *id.*, Ex. 1 at 009. In late June 2015, however, he started telling mental
7  health providers at the NWDC that he wanted to be restarted on his medications. *Id.* at ¶ 8; *id.*,
8  Ex. 1 at 011-013. But when he saw Dr. Mallya on June 24, 2014, he declined medications
9  despite his complaints of auditory hallucinations. *Id.* Dr. Mallya noted that Mr. Morelo's mental
10 status did not appear to have changed despite the fact that he had not taken psychiatric
11 medications for the previous two months. *Id.*

12 Dr. Mallya did not see Mr. Morelo again until December 29, 2014, after Mr. Morelo had
13 been place in segregation as a result of fighting with other detainees. *Id.* at ¶ 9; *id.*, Ex. 1 at 014-
14 015. Mr. Morelo agreed to restart his psychiatric medications if they would not cause him to
15 gain weight. *Id.* To accommodate this request, Dr. Mallya prescribed Geodon, a medication
16 with lower potential to cause weight gain, to treat Mr. Morelo's auditory hallucinations. *Id.*

17 Shortly after starting Geodon, Mr. Morelo experienced priapism, which resolved without
18 intervention. *Id.* at ¶ 10; *id.*, Ex. 1 at 017-018. Dr. Mallya immediately discontinued Geodon.
19 *Id.* When Dr. Mallya examined Mr. Morelo on January 5, 2015, Mr. Morelo reported he would
20 manage his auditory hallucinations without medication. *Id.*

21 Mr. Morelo next saw Dr. Mallya on April 13, 2015. *Id.* at ¶ 11; *id.*, Ex. 1 at 021-023.
22 Despite Mr. Morelo's complaints of auditory hallucinations, he did not ask to restart psychiatric
23 medications. *Id.*

REPORT AND RECOMMENDATION - 3

On July 27, 2015, Mr. Morelo saw Ms. Glenn-Reller and reported that "the Immigration Judge said if he went to a mental health hospital, they would then set up discharge housing facilities and he then would be able to be discharged from Immigration custody, returning back to special housing benefits in Seattle and not have to be deported." Hansford Decl., Ex. 1 at 041. Mr. Morelo also told Ms. Glenn-Reller he did not believe he was receiving good mental healthcare at the NWDC because "he cannot get the medication he wants." *Id.*

On July 30, 2015, Dr. Mallya saw Mr. Morelo at his request. Mallya Decl. at ¶ 12; *id.*, Ex. 1 at 024-026. Mr. Morelo was angry with Dr. Mallya and accused the doctor of abusing him by not sending him to a hospital or prescribing the right medications. *Id.* After Mr. Morelo calmed down, Dr. Mallya offered to restart psychiatric medications, but Mr. Morelo did not want any medication that had the potential to cause priapism. *Id.* Instead, he asked for medications that would help with his motor restlessness, labile mood, and insomnia, and so Dr. Mallya prescribed Depakote and Buspar. *Id.*

Dr. Mallya saw Mr. Morelo two times in August 2015. *Id.* at ¶ 13; *id.*, Ex. 1 at 028-029. Both times, Mr. Morelo reported that Depakote and Buspar had reduced his nervousness, anxiety, and insomnia, but that he still had auditory hallucinations. *Id.* Again, Mr. Morelo refused to take any medication that could cause priapism. *Id.*

On September 9, 2015, Mr. Morelo complained to Dr. Mallya that Depakote and Buspar had not helped with his auditory hallucinations and that no one cared about his wellbeing. *Id.* at ¶ 14; *id.*, Ex. 1 at 029. Mr. Morelo requested a "new medication" that his family told him was "available outside," or transfer to a hospital in the community. *Id.* Dr. Mallya explained that all available medications prescribed to treat auditory hallucinations have similar mechanisms of action and, therefore, have the potential to cause priapism. *Id.* Mr. Morelo refused medication

for his auditory hallucinations.  *Id.*

Dr. Mallya treated Mr. Morelo for the last time on October 7, 2015.  *Id.* at ¶ 15; *id.*, Ex. 1 at 029.  Mr. Morelo reported improvement in his restlessness, anxiety, and insomnia since starting Depakote and Buspar.  *Id.*  Dr. Mallya offered to prescribe Latuda, a relatively new medication for auditory hallucinations, but Mr. Morelo refused because of the risk of priapism.  *Id.*

B.      **Procedural history**

Mr. Morelo initiated the instant action in August 2015, only a few weeks after reporting to Ms. Glenn-Reller that there were immigration benefits to being transferred to an intensive mental health treatment facility.  The Court ordered Mr. Morelo to file an amended complaint, which he did, and then directed service upon Dr. Mallya.  Dkts. 2 & 7.  Dr. Mallya filed an answer, and the Court issued a pretrial scheduling order.  Dkts. 21 & 23.  Since the beginning of this litigation, Mr. Morelo has filed numerous motions seeking, among other things, transfer to a mental health treatment facility or release from immigration detention.  *See, e.g.*, Dkts. 9, 12, 15, 18, 19, 25. The Court has denied Mr. Morelo's requests.  *See, e.g.*, Dkts. 40, 52, 57.

On January 19, 2016, Dr. Mallya filed the summary judgment motion that is currently before the Court.  Dkt. 43.  Mr. Morelo filed a response but did not submit any new evidence.  Dkt. 56.  Dr. Mallya did not file a reply.

## DISCUSSION

A.      **Summary judgment standard**

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The moving party

bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. Material facts are those which might affect the outcome of the suit under governing law. *Id.* A mere scintilla of evidence is insufficient to create a factual dispute. *Id.* at 252. The nonmoving party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

In ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, and may not weigh the evidence or make credibility determinations, *Anderson*, 477 U.S. at 248.

**B.     Dr. Mallya is entitled to summary judgment**

Mr. Morelo brings this action pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), which is the federal analog to suits brought against state officials under 42 U.S.C. § 1983. *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006). To prevail on his claim, he must show that an official acting under color of federal law violated his federal constitutional or statutory rights. *See Morgan v. United States*, 323 F.3d 776, 780 (9th Cir. 2003).

Dr. Mallya argues he did not violate Mr. Morelo's Eighth Amendment rights. To establish an Eighth Amendment violation related to medical care, an inmate must prove "acts or

omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010).  Prison officials may be deemed to have been deliberately indifferent to an inmate's serious medical needs "when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (quoted sources and internal quotation marks omitted).  However, a prison official may be held liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting *Estelle*, 429 U.S. at 104), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

There is no evidence that Dr. Mallya denied, delayed, or intentionally interfered with Mr. Morelo's medical treatment.  Dr. Mallya saw Mr. Morelo regularly and prescribed him a variety of medications for his psychiatric diagnoses.  Mallya Decl. ¶¶ 3-5, 9, 12.  Dr. Mallya offered Mr. Morelo several different medications to address Mr. Morelo's complaints of auditory hallucinations, and Mr. Morelo expressly declined all such offers after suffering priapism on two occasions.  *Id.* at ¶¶ 6, 15.  Mr. Morelo's primary complaint in this lawsuit is that Dr. Mallya has not prescribed him the appropriate medication for his schizoaffective disorder.  But Mr. Morelo merely raises a difference of opinion regarding the proper medical treatment, which is insufficient to prevail in a civil rights action.  *See Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) (difference of opinion between inmate and medical authorities regarding proper medical treatment does not give rise to a § 1983 claim).  Viewing the evidence

in the light most favorable to Mr. Morelo, Dr. Mallya is entitled to judgment as a matter of law.

## CONCLUSION AND RIGHT TO OBJECT

For the foregoing reasons, the Court recommends that Mr. Morelo's requests for transfer to a mental health treatment facility or release from immigration, Dkts. 39 & 49, be **DENIED**, and that Dr. Mallya's motion for summary judgment, Dkt. 43, be **GRANTED**. A proposed Order accompanies this Report and Recommendation.

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case. Objections, however, may be filed and served upon all parties no later than **March 15, 2016.** The Clerk should note the matter for **March 18, 2016**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed ten pages. The failure to timely object may affect the right to appeal.

DATED this 23rd day of February, 2016.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 8